## WILLIAM A. BALDWIN AND OTHERS *vs*. THE TOWN OF NORTH BRANFORD.

Sundry towns having, without legal power, passed votes appropriating money as bounty for men drafted for the military service of the United States, the legislature by the act of Nov. 13, 1863, referring to such action as " without authority of law," authorized such towns at meetings legally called within a time limited, to confirm their previous action if they saw fit, and if confirmed the same was to be " considered good and valid in the same manner as if such towns had the inherent legal power to so appropriate money." The previous action of the town of *N* in voting to appropriate money as such bounty was invalid, not merely by reason of want of power to make such appropriation, but because there was no notice in the warning of the meeting, which was a legal meeting for other purposes, that that subject would be acted upon. Held that, under the act referred to, the latter invalidity would be healed by the confirmatory vote, as well as the former.

Towns can not be said with propriety to possess any "inherent legal power." Whatever power they have is conferred.

A warning of a town meeting addressed to "the inhabitants" of the town is not invalid by reason of the fact that there may be many of the inhabitants who are not voters. The notice is good as to such of them as are voters.

Besides, the term "inhabitants," as used in such a connection, in the statutes, in common parlance, and in the forms immemorially used, imports those who are qualified to vote.

It is not necessary that a warning of a town meeting should be addressed to any persons. All that the statute requires in this respect is a written notice of the meeting.

A vote of a town directing the selectmen to give an order on the treasurer, is an appropriation of money, in the ordinary acceptation of that term.

A vote of a town to pay $150 "to each drafted man who may be accepted by the board of enrollment" is not void for uncertainty, as being applicable to all drafted men wherever they may belong, since the vote, construed, as it ought to be, in view of the circumstances in which it was passed, could only be understood as applying to men drafted to fill the quota of the town.

BILL for an injunction, against the payment by the town of North Branford, of which the petitioners were inhabitants and tax payers, of certain moneys appropriated by the town in aid of men drafted for the military service of the United States. The facts were specially found by the superior court.

On the 28th of September, 1863, the following notice, signed by a majority of the selectmen of the town of North Branford, was duly posted and published : " Notice. The inhabitants of the town of North Branford are hereby notified that their annual town meeting will be held in the basement of the congregational church, in the society of Northford, on the first Monday of October next, at 10 o'clock, A. M., for the purpose of [choosing town officers, &c. ;] also, to lay a tax (if considered expedient) to discharge the debt incurred by paying a bounty to volunteers for the war, and to transact any business necessary and lawful at said meeting." In pursuance of this notice the meeting was held and the following vote passed :—" *Voted* that the selectmen of this town be instructed to draw immediately orders on the town treasurer, to the amount of one hundred and fifty dollars each, and present one to each drafted man who may have been accepted by the board of enrollment, and also a like sum to those who have volunteered for three

years without any bounty from the town, and have faithfully served."

On the 13th day of November, 1863, the following act was passed by the General Assembly :—

" Whereas certain towns of this state, since the first day of July, 1863, have held town meetings, and without authority of law have appropriated money to aid persons drafted under the act of Congress entitled ' an act for enrolling and calling out the National forces, and for other purposes :'—Now therefore,

" Be it enacted by the Senate and House of Representatives in General Assembly convened :

" SEC. 1. That in all towns where any such meeting or meetings have voted to assist any persons drafted under the provisions of the act of Congress entitled " an act for enrolling and calling out the national forces and for other purposes," either by paying to them or for them a certain sum of money to procure their commutation of service, or to procure for them substitutes, or to be paid to them or their families in case they should be themselves mustered into the service of the government, it shall be the duty of the selectmen of such towns to call meetings of the legal voters of the towns, upon the third Monday of January, 1864, for the purpose of allowing the voters of their respective towns, if they shall deem it expedient, to confirm the former action of such town in so voting and appropriating money as aforesaid to aid drafted men or their families ; and in case a majority of the legal voters of such town, voting in such meeting duly warned and held, shall vote to confirm such previous action, then the same shall be considered good and valid in the same manner as if such town or towns had the inherent legal power to so appropriate money ; and such towns so confirming their former action shall have the power to borrow upon the credit of the town, the money necessary to carry the vote or votes into effect, or to pay the debt thus created ; or shall have the power to lay and collect a tax upon the polls and rateable estate of the town to pay said debt."

On the 3d Monday of January, 1864, a town meeting called

in accordance with the provisions of the foregoing act, was held by the town of North Branford, at which the following vote was passed :—

" Whereas, the legal voters of the town of North Branford did vote in a town meeting held on the first Monday in October, 1863, to give a town order of one hundred and fifty dollars to each drafted man accepted by the board of enrollment, therefore be it *voted,* that said former action be validated and confirmed, and that the selectmen be instructed to issue immediately said orders of one hundred and fifty dollars each, upon the treasurer of the town, and present one to each man drafted under the provisions of the act of Congress entitled ' an act for enrolling and calling out the national forces and for other purposes,' who may have been accepted by the board of enrollment."

On these facts the case was reserved for the advice of this court.

*C. Ives* and *Rogers*, for the petitioners.

The injunction prayed for ought to be granted for the following reasons :

1. The meeting held in North Branford on the first Monday of October, 1863, was not a lawful town meeting for any purpose. The notice under which it was held was a notice, not to the *legal voters* of the town, but to its " *inhabitants* " only. An " inhabitant " is " one who dwells or resides permanently in a place, or who has a fixed residence " therein, (Webster's Dict.) ; and includes women, foreigners, and blacks, who make the town the place of their permanent abode. These inhabitants are notified that *their annual meeting* will be held at the time and place mentioned in the notice. There was no annual meeting of the legal voters of North Branford called, and therefore none was or could be held.

2. The vote to aid drafted men, passed in this meeting, would have been a nullity had the meeting been a meeting of the legal voters of the town, because there was nothing in the call to indicate that any such business was to be brought before the meeting. No business could have been lawfully

transacted which was not embraced in the call. *Hayden* v. *Noyes*, 5 Conn., 391 ; *Willard* v. *Killingworth*, 8 id., 247.

3. The vote is void for its generality and uncertainty. The town orders are to be given to all drafted men who have been accepted, without any limitation of any kind. It is not confined to those drafted under any particular law, nor at any particular time, nor to those living in any particular place.

4. The vote was to draw and present the town orders " *immediately*." More than four months having elapsed, and the orders not having been drawn, no vote in January, 1864, under the law of November 13th, 1863, can authorize the giving of town orders *now*. If the vote of the inhabitants is confirmed, and has efficacy in other respects, it only confers the right to make and present orders in November, 1863. Hence the meeting of January 18th, 1864, undertook not merely to confirm, but to give power *de novo*, which could not be legally done.

5. The law of November 13th, 1863, was intended to give the towns that had made appropriations to certain drafted men, therein particularly described, an opportunity to confirm their said acts, *where they were invalid by reason of the want of statutory power*. Under it an approving vote validates only in those cases where the towns have, in the first instance, held meetings legal and valid in all other respects. The preamble states that certain towns " without authority of law have appropriated money," &c., and the first section of the act itself simply provides that in case of a confirming vote, the previous action of the town " shall be considered good and valid *in the same manner as if such town or towns had the inherent right to so appropriate money*." Under this act only one specific defect can be healed. The remedy is not a specific for every description of mistake or illegality in regard to drafted men.

6. The notice of the meeting of January 18th, 1864, and the vote passed at that meeting, are not within the provisions of the statute of November, 1863 ; because, 1st. They make not the slightest allusion to any votes which the town had passed to aid men drafted under the act of Congress referred to in the

statute of November, 1863. 2d. They do not propose to confirm any vote of the town by which drafted men credited upon the quota of North Branford have been or are to be aided ; but all drafted and accepted men everywhere without limitation of time. 3d. They propose to confirm the proceedings of a town meeting alleged to have been held on the first Monday of October, 1863, when in fact the town can not be regarded as having held any such meeting. 4th. The appropriation made by the " inhabitants " at their meeting was not an appropriation of " money," but only a present of an " order," which neither the treasurer of the inhabitants, or of the town, nor any other person, was authorized and empowered to pay. 5th. It does not appear that on the first Monday of October, 1863, any man had been drafted in North Branford and accepted by the board of enrollment. The town at least should be enjoined against aiding any who had not been then drafted and accepted. 6th. The design of the law of November, 1863, was to validate the action of towns which had appropriated and paid money for the purposes therein specified, and as no money has been so appropriated and paid by North Branford, the provisions of the healing statute in question do not apply to that town.

*Beach* and *Watrous*, for the respondents.

BUTLER, J. In this case the respondents admit that they were without authority of law to pass the votes of October 5th complained of, but interpose the act of November 13th, which they claim conferred authority to ratify and confirm those votes, and aver a subsequent ratification of them pursuant to the act. The petitioners deny the legal efficacy of the act of November 13th, and the alleged confirmation of the votes of October 5th, on several grounds, all of which we have considered and think untenable ; and the reasons for that opinion applicable to the several questions will be given in the order in which the questions have been raised and discussed.

1. The petitioners claim in the first place, that the act of November 13th did not authorize a confirmation of the vote

of October 5th, because the meeting of October 5th was not legally warned. To this claim there are several conclusive answers. First, the act was intended to reach such a case as this. That intent appears clearly from the preamble, which recites that certain towns have held town meetings, and *without authority of law* have appropriated money, &c. It is notorious that most of the town meetings were warned and holden for that *unlawful* purpose only, and were therefore *de facto*, but not *de jure* meetings. Construing the act then in connection with the subject matter, the intent to embrace *de facto* meetings is clear. And second, it is clear that the meeting of October 5th was *de jure*. It was warned and held as the annual town meeting. And the objections to the notice are not well founded, for several reasons. 1st. The term " inhabitants " in the statute, in common parlance and in the forms of notice immemorially used, and when used in such a connection, imports those who are qualified to act in town meeting. 2d. The notice confers no rights and the restraints are matters of statute, and the maxim " *majus in se continet minus* " may well be applied. If the notice had been addressed to the inhabitants of the adjoining town of Branford also, it would have been a good notice to the qualified voters of North Branford. And 3d, the address was superfluous. The statute requires nothing of the kind. It requires a notification in writing, (that is, a writing giving information,) " specifying the objects for which they (the meetings) are to be held, signed by the selectmen or a majority of them, set upon the sign-post or sign-posts in the towns, at least five days exclusively before the meeting is to be held," and adds that such a notice " shall be *sufficient notice* to the *inhabitants* to attend such meeting." Rev. Stat., tit. 3, § 19. If therefore the words " the inhabitants of " were left out of the notice it would be good. And so it would if it had simply said, " The annual town meeting of the town of North Branford will be held," &c., for it would have been all the *notification* required by the letter, spirit and purpose of the law.

2. It is claimed in the second place, that the votes com-

plained of were invalid because there was in the notice no sufficient specification of an intention to pass them. That is so, unquestionably. The notice contemplated a tax to pay a particular debt already incurred, but the votes passed gave new gratuities and contemplated a new and further and different use of the money of the town ; and unless the town were authorized by the act of November 13th to ratify and confirm such votes, they remain illegal. We are of opinion that the act did authorize their ratification notwithstanding the defect. The preamble recites that meetings have been held, and " without authority of law have appropriated money," and the language of the first section referring to it is, " where *any such meeting* or meetings have voted," &c., and it is broad enough to embrace any and all meetings, whether *de facto* or *de jure*, at which money was appropriated to aid drafted persons, and any and all votes passed without authority of law. The votes in question were without authority of law in two particulars,—first, because the town had no authority to pass votes for any purpose not specified in the notice, and second, because without special authority they could not pass the votes in question at all ; and one is as much within the purview of the statute as the other. It is indeed said that the votes were by another provision of the law to be confirmed and " considered good and valid in the same manner as if such town or towns had the inherent legal power to so appropriate money." But by that we are satisfied no limitation of the confirmation previously provided for was intended. For, in the first place, the towns do not possess and never have possessed any inherent legal power, and the General Assembly could not have contemplated its existence ; and in the second place, legal power is the same thing and not different, whether inherent or statutory. All that was intended by that phrase was the power to do the act, variously spoken of in the statute as " inherent legal power " and " authority of law."

3. It is said in the third place, that the vote of October 5th is void for generality or uncertainty. But the language of the act of November is as general, and describes and embraces just such votes, and authorizes their ratification. The objec-

Baldwin *v.* Town of North Branford.

tion therefore is as applicable to the law as the vote, but is without force in respect to either. Both, when construed with a proper regard to the circumstances surrounding the subject matter on which they are to act, intend persons drafted from the town to fill the quota of the town. And such is the construction given and admitted by the petitioners in their petition, and they can not be permitted to assert the contrary as an objection to the validity of the vote.

4. It is further insisted that inasmuch as the vote directed the orders to be drawn immediately, and they were not drawn before the confirmation was had, that confirmation and the vote of January 18th can not authorize the giving orders now. We do not perceive the force of the objection. Besides, the execution of the vote was and is suspended by the injunction obtained by the petitioners, and awaits a determination of this case.

5. Nor do we think there is any foundation for the fifth objection. Undoubtedly the legislature intended to give the towns specified an " opportunity to confirm their said acts when they were invalid by reason of the want of statutory power." But as we have already said, all their powers are statutory, and the want of power to act *at all* in respect to any particular subject matter, and the want of power to act because no meeting was called for that purpose in conformity with a statutory requirement, are both defects of statutory power. In both cases the action is illegal because the " legal power " or " authority of law," has not been delegated or has been withheld.

6. It is insisted lastly that the notice of January 11th, and the votes of January 18th, 1864, are not within the provisions of the act of November 13th, 1863, and under this point several specifications are made. We do not deem a particular consideration of each of them necessary. Several are repetitions of objections made in another form and already considered. It is sufficient to say with respect to them, that the statute was intended to give all the towns which had held meetings and appropriated money in aid of drafted men, and during a certain period, an opportunity to confirm such votes,

if such was their sober second thought; that in doing that they specified the act of congress, and the only one which was in force and being carried into effect during the period indicated; that by necessary implication, when the notices or votes of the towns referred in general terms to any act of congress, or to drafted men or boards of enrollment, they referred to the act of congress specified in the act of November 13th, and to action had under it and no other; that when any corporation act under a law, by-law or practice which requires in order to any expenditures of their monies that a certain officer or certain officers shall draw an order on the treasurer, such order, like a bank check, is a method of payment, and a vote directing the giving an order is an appropriation of money in the ordinary acceptation of the terms, and within the meaning of the act of November 13th; and that the language of the vote of January 18th is in precise conformity with the language of the act of November 13th in respect to drafted men, and there is no evidence or presumption that the authority given by the vote to the selectmen will be exceeded.

We see no further occasion or justification for a continuance of the injunction.

The bill should be dismissed, and we so advise the superior court.

In this opinion the other judges concurred.