## BLOOMFIELD *v.* CHARTER OAK BANK.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF CONNECTICUT.

Argued January 5, 6, 1887. — Decided April 4, 1887.

A town in Connecticut cannot make a contract, or authorize any officer or agent to make one in its behalf, except by vote of the inhabitants at a meeting warned by publicly posting a notice specifying the subject of the vote; and any one, who relies upon a vote as giving him rights against the town, has the burden of proving such a notice, although the selectmen and town clerk have neglected their duty of filing and recording the notice, and although the record of the meeting states that it was "legally warned."

The property of any inhabitant of a town in Connecticut may be taken on execution upon a judgment against the town.

Neither the selectmen nor the treasurer of a town in Connecticut have general power to make contracts, to borrow money, or to incur debts, in behalf of the town.

The reports made to an annual meeting of a town in Connecticut by the selectmen and treasurer, as required by statute, are not, unless acted on by the town, evidence to charge it with debts which those officers had no authority to contract in its behalf.

A promissory note, made by the treasurer of a town in Connecticut to a bank, of which he has borrowed money without the knowledge of the town, does not bind the town, unless authorized or ratified by a vote of the town at a meeting warned for the purpose; and is not made valid, nor the town estopped to deny its invalidity, by the acceptance, at an annual meeting, of the reports of the selectmen and treasurer, showing various sums paid to other persons, or received, "on town notes," and an "indebtedness of the town by notes;" or by a vote at a subsequent meeting duly warned, authorizing the selectmen to pay certain notes made by the treasurer to other persons, and by the selectmen's paying those notes accordingly.

THIS action was brought June 5, 1880, by a national bank against the Town of Bloomfield in the State of Connecticut, upon three promissory notes, dated June 20, June 21, and July 1, 1879, and payable three months after date, for the aggregate sum of $19,433.30, and all alike in form, the first being as follows:

"Hartford, June 20, 1879.  $5500.   Three months after date The Town of Bloomfield promise to pay to the order of S. J. Mills fifty-five hundred dollars at Charter Oak National Bank.   Value received.

                              "S. J., MILLS, Treasurer."

The answer denied that the defendant made the notes, or that Mills, as its treasurer, had authority to make them in its behalf.

A trial by jury was had, resulting in a verdict for the plaintiff in the full amount of the notes and interest; and a bill of exceptions was tendered by the defendant and allowed by the court, so much of which as is material to be stated was as follows:.

The Town of Bloomfield was incorporated in the usual manner of Connecticut towns, by a resolve of the legislature of Connecticut, in May, 1835, by which the inhabitants of the

town and their successors forever residing therein "shall have and enjoy all the powers, privileges and immunities which are enjoyed by other towns in this state."

It was admitted that Mills was elected treasurer of the town on October 5, 1868, and was reëlected annually and acted as treasurer until July 16, 1879, when he resigned; and that he made and signed the notes in suit, and indorsed them to the plaintiff.

The defendant objected to the admission of the notes in evidence, because the plaintiff had shown no authority from the defendant to Mills to borrow money or execute notes. But the court, against the defendant's objection and exception, admitted the notes, "subject to the duty of the plaintiff to prove such authority."

The plaintiff then offered in evidence a copy, certified by the town clerk February 16, 1877, of the record of this vote of the town:

"At an annual town meeting, legally warned and held at the usual place, October 5, 1868; S. J. Mills, moderator; H. W. Rowley, assistant town clerk; Voted, That hereafter the town treasurer be authorized and empowered to borrow money for the use of the town."

The defendant objected to the admission of this vote, because the plaintiff offered no evidence that the warning of that meeting specified any such object as was contained in the vote. It was admitted that the warning had not been recorded by the town clerk, and was not on file in his office.

The court overruled the objection, and admitted the vote in evidence, "not as showing a legal or valid vote of the town, but subject to the duty on the part of the plaintiff to prove that the town at its meetings, by its affirmative acts and conduct, had assented to and treated as authoritative the power of the treasurer under said vote to borrow money for the use of said town; or for the purpose of establishing that by the course of conduct of the town in its town meeting it had practically established the authority of the treasurer under said vote; and of establishing an estoppel in pais against the power of the town to treat as invalid a vote the validity of which

had been affirmatively declared by its acts, if it should appear that the defendant had intentionally caused the plaintiff to believe in a state of facts which it now claims not to exist, and induced it to act on such belief." To this ruling the defendant excepted.

The plaintiff thereupon, " for the purpose of proving that the town had made the said Mills its general agent in fact to borrow money, and had at its town meetings, and by its affirmative acts in said meetings, treated the treasurer as authorized under said vote to borrow money for the town," offered the following evidence :

1st. Forty-four notes, for the aggregate sum of more than $64,000, made by Mills as treasurer in behalf of the town to sundry persons, other than the plaintiff, and mostly citizens of Bloomfield, between the times of the passage of that vote and of his resignation, all of which bore indorsements of payments of interest, and had been paid and taken up.

2d. Copies of the annual printed reports made by the selectmen of the town, together with the treasurer's annual reports, to the annual town meetings from 1869 to 1878 inclusive ; and the records of the town meetings, showing the action of the town thereon.

The reports of those officers in 1869 showed sums paid for "interest on town notes " to sundry individuals named, $1507, and to two of them for "town notes taken up," $1646.58; "indebtedness of town by notes, $27,100 ; " and "amount received on town notes, $6559.88." The reports in the subsequent years showed similar items, varying in amount, and the "indebtedness of the town by notes " gradually increasing to $48,416.28. It was admitted that the sums paid for interest included the payments of interest on the forty-four notes aforesaid.

The records of the town meetings showed that at an adjournment of the annual meeting of 1868 it was " Voted, That the selectmen be directed to have the report of items of account printed yearly, 500 copies ; " that at the annual meeting in 1869, the reports of the selectmen and treasurer were " read and accepted ; " that in 1870, " the reports of selectmen and

town treasurer, being in printed form, were not called for;" and that there was no record of any action of the town at the subsequent meetings with reference to such reports. But it was admitted that the printed reports were in fact distributed to all who attended those meetings.

3d. A vote of the town, passed at a special meeting, duly warned, and held May 29, 1880, authorizing the selectmen to make and deliver notes in the name and behalf of the town to take up and cancel "certain memoranda of indebtedness, signed by the selectmen or other officers of said town, and all bearing date July 1, 1879," for money lent to the town and unpaid. Also, evidence that, in pursuance of this vote, the selectmen took up twenty notes, some signed by Mills as treasurer, and others both by him as treasurer and by the selectmen, amounting in all to $45,184, and given by him in their presence on July 1, 1879, to various persons, in renewal of or substitution for notes which he had previously given to them; and that these notes were afterwards taken up and paid by the selectmen.

The defendant objected to all this evidence as irrelevant and immaterial. But the court admitted it, for the reasons above stated, and the defendant excepted to its admission.

The bill of exceptions proceeded as follows:

"The plaintiff's account with Mills as such treasurer commenced in March, 1871, and continued until July, 1879. The first note which he procured to be discounted as such treasurer was discounted on March 24, 1871, and thereafter he continuously obtained discounts and renewals of old notes until the date of the last note, when the three notes in suit were outstanding. The aggregate of his account was over $250,000.

"In this account, he deposited moneys of the town, and, without the knowledge of the plaintiff, small amounts of his own, and checked out from said account, both for the use of the town, and, without the knowledge of the plaintiff, small amounts for himself.

"The plaintiff offered evidence and attempted to trace each note in suit, so as to show that nearly the whole amount of the proceeds of said notes went to the use of the town, and that

nearly all of the checks drawn against said proceeds were given to inhabitants of the town in payment of town orders given by the selectmen. But no evidence was offered to show that the town in its town meeting assembled knew that Mills kept his bank account with the plaintiff, or that he was borrowing the money represented by these notes, or those of which these were renewals, of the plaintiff.

"The plaintiff disclaimed any advantage by virtue of being indorsee of the notes rather than payee, and did not claim that it stood on that account in any other relation to the defendant than if it had been the payee.

"The plaintiff also offered evidence which the defendant claimed showed that at the time when the plaintiff first obtained a copy of said vote of October 5, 1868, from the town clerk of said town, viz., on February 22, 1877, all the moneys represented by the notes in suit had been advanced to said Mills, treasurer, except the sum of $1500, and the notes in suit, except so far as said $1500 was concerned, were renewals of notes made before said date, and before the plaintiff knew of said vote from the record itself. The plaintiff denied the validity of said claim.

"It sufficiently appeared from the evidence in the case that the plaintiff supposed or thought that Mills was authorized to borrow money for the use of the town and give its notes therefor, from the commencement of the account of the plaintiff with Mills as such treasurer.

"There was no other evidence in regard to any affirmative acts of the town in its town meetings assembled, which would constitute an agency in Mills, or raise an estoppel against the town, other than those which are hereinbefore contained; and this comprised all the evidence in the case in regard to estoppel, ratification, or agency, the court having confined the plaintiff in its testimony to acts of the town in town meetings, and excluded any acts or knowledge of the selectmen."

The plaintiff thereupon rested its case; and the defendant again objected to the admission in evidence of the notes sued on, and the vote of October, 1868, on the grounds above stated; also on the grounds "that no sufficient evidence had

been offered to prove a ratification by the town of the said vote, or to establish any estoppel against the town which would prevent it from setting up the invalidity of said vote, or in connection with said vote to prove a general authority given by the town to Mills to borrow money for the town and give notes therefor, sufficient to make the town liable on the notes in question;" "that the town, as a municipal corporation, had no inherent power to borrow money or give notes therefor, nor had any special authority therefor been proved; that even if it had such power, it could only exercise it by a vote specifying objects for borrowing money, which were within the duties of the town to perform, and limiting the amount so to be borrowed; and that even if the town had such power, it could not delegate to its treasurer power to borrow money, unlimited either in object or in amount;" "that by proper construction of said vote, it did not authorize any person who might thereafter be treasurer to borrow any sum of money which he might think fit, and make the town liable therefor, and did not authorize Mills to borrow the money and give the notes in question;" and "that even if the town had given authority to Mills to borrow, it had not given him power to give negotiable promissory notes like those in suit for the money so borrowed."

But the court overruled the objections, and admitted the notes and the vote in evidence, and to this ruling the defendant excepted.

The defendant then introduced evidence tending to show that the warning of the town meeting of October 5, 1868, did not, in fact, contain any notice that the matter of authorizing the treasurer to borrow money would come before the meeting; and also evidence tending to show that Mills, during all the time from 1869 to 1879, was largely in default to the town, having embezzled large sums of money belonging to the town, in addition to the sums obtained by him from the plaintiff, and that the moneys obtained by him from the plaintiff were not used to pay debts of the town, or, if so used in part, only to pay debts for the payment of which the town had furnished him sufficient money, which he had embezzled

as aforesaid, and so were in fact obtained and used by him for his own purposes, to cover such embezzlement.

The defendant also put in sundry votes passed by the town in 1862, 1863 and 1864, authorizing the selectmen to borrow money to pay bounties to soldiers, and to give orders on the town treasurer or notes of the town therefor, which votes had been ratified and confirmed by the legislature of Connecticut before the town meeting of October 5, 1868; as well as evidence that at the meeting of May 29, 1880, and before the passing of the vote above mentioned, one of the selectmen read to the meeting a list of the notes signed by Mills as treasurer, either alone or with other officers of the town, which contained no notes given by Mills to the plaintiff.

Before the charge to the jury, the defendant renewed its objections by requests for instructions, which the court refused to give.

The court instructed the jury that in the absence of all testimony there was no presumption that the warning of the town meeting of October 5, 1868, specified the subject of giving authority to borrow money; and that the vote of that meeting, "standing alone, did not give general authority to borrow money and to act as general agent in that regard;" but submitted the evidence in the case to the jury as sufficient to authorize them to find that the defendant, by continuous and affirmative action and conduct in its town meetings, knowing that its treasurer had generally and freely borrowed money and given notes under that vote, had made him in fact its general agent for that purpose, had held him out to the plaintiff as such, and had ratified his acts, and was estopped to deny their validity.

The defendant excepted to the refusal to instruct as requested, and to the instructions given, and sued out this writ of error.

*Mr. Charles E. Perkins* for plaintiff in error. *Mr. A. F. Eggleston* was with him on the brief.

*Mr. Alvan P. Hyde* for defendant in error.

MR. JUSTICE GRAY, after stating the case as above reported, delivered the opinion of the court.

We have not found it necessary to consider how far a town in Connecticut has the power to give promissory notes, because in our opinion the evidence in this case is incompetent to prove that this town ever authorized its treasurer to make the notes in suit, or did any act which made them binding on the town.

Towns in Connecticut, as in the other New England States, differ from trading companies, and even from municipal corporations elsewhere. They are territorial corporations, into which the State is divided by the legislature, from time to time, at its discretion, for political purposes and the convenient administration of government; they have those powers only, which have been expressly conferred upon them by statute, or which are necessary for conducting municipal affairs; and all the inhabitants of a town are members of the *quasi* corporation. 1 Swift's System, 116, 117; *Granby* v. *Thurston*, 23 Conn. 416; *Webster* v. *Harwinton*, 32 Conn. 131; Dillon Mun. Corp. §§ 28–30.

In Connecticut, as in Massachusetts and Maine, by common law or immemorial usage, the property of any inhabitant may be taken on execution upon a judgment against the town. *Atwater* v. *Woodbridge*, 6 Conn. 223, 228;[1] *McLoud* v. *Selby*, 10 Conn. 390;[2] *Beardsley* v. *Smith*, 16 Conn. 368;[3] 5 Dane Ab. 158; *Chase* v. *Merrimack Bank*, 19 Pick. 564, 569;[4] *Gaskill* v. *Dudley*, 6 Met. 546;[5] *Adams* v. *Wiscasset Bank*, 1 Greenl. 361;[6] *Fernald* v. *Lewis*, 6 Greenl. 264. See also *Hopkins* v. *Elmore*, 49 Vt. 176; Rev. Stats. N. H. 1878, c. 239, § 8.

A town cannot make a contract, or authorize any officer or agent to make one in its behalf, except by vote in a town meeting duly notified or warned; and the notice or warning must specify the matter to be acted on, in order that all the inhabitants (whose property will be subject to be taken on execution to satisfy the obligations of the town) may know in advance what business is to be transacted at the meeting.

---

[1] *S. C.* 16 Am. Dec. 46.    [2] *S. C.* 27 Am. Dec. 689.    [3] *S. C.* 41 Am. Dec. 148.
[4] *S. C.* 31 Am. Dec. 163.    [5] *S. C.* 39 Am. Dec. 750.    [6] *S. C.* 10 Am. Dec. 88.

If the subject of the vote is not specified in the notice or warning, the vote has no legal effect, and binds neither the town nor the inhabitants. No one can rely upon a vote as giving him any rights against the town, without proving a sufficient notice or warning of the meeting at which the vote was passed. *Reynolds* v. *New Salem*, 6 Met. 340; *Stoughton School District* v. *Atherton*, 12 Met. 105; *Moor* v. *Newfield*, 4 Greenl. 44; Dillon Mun. Corp. §§ 266–268.

Upon this point the statutes and decisions of Connecticut are perfectly clear.

The statutes require the annual town meetings to be held in October, November or December, and permit special meetings to be convened when the selectmen deem it necessary, or on the application of twenty inhabitants qualified to vote in town meetings; and provide for notifying or warning both annual and special meetings as follows: "When town meetings are to be held, a notification, either written or printed, specifying the objects for which they are to be held, signed by the selectmen, or a majority of them, set upon the sign post or sign posts in the towns, at least five days inclusively before the meeting is to be held, shall be sufficient notice to the inhabitants to attend such meeting." Rev. Stats. 1866, tit. 7, §§ 19, 21; 1821, tit. 103, § 2. They also provide that "the warning of every meeting of any borough, city, ecclesiastical society, school society, school district, or other public community, shall specify the objects for which such meeting is to be held." Rev. Stats. 1866, tit. 7, § 232.

Whenever a town meeting is warned agreeably to the provision above quoted, the statutes, with a view to preserving the best evidence of the contents of the notice or warning, make it the duty of the selectmen to cause a copy or duplicate thereof to be left with the town clerk before the meeting, and the duty of the clerk to record it. Rev. Stats. 1866, tit. 7, § 19. But these duties are imposed on the selectmen and the clerk as public officers, not as agents of the town. They are not made duties of the inhabitants of the town in their corporate capacity, but official duties of those charged with their performance. The neglect of the officers to file or to record a sufficient

notice of a town meeting is theirs only, and not the neglect of the town. So far as the town is concerned, the utmost effect of an omission to record the notice is to authorize its contents to be proved by other evidence. *Brunswick First Parish* v. *McKean,* 4 Greenl. 508.

The annual election of town officers, or any other act wh ch the statutes require to be done by the inhabitants at each annual meeting, might perhaps be sufficiently proved by the record of what was done at the meeting, without proving a special notice of it in the warning. *Thayer* v. *Stearns,* 1 Pick. 109; *Gilmore* v. *Holt,* 4 Pick. 258. But, with those exceptions, such a notice is a necessary prerequisite to the validity of any act of the town, either at the annual meeting or at a special meeting.

The statutes, for instance, provide that " the inhabitants of the respective towns, in legal meetings assembled, shall have power" to make certain by-laws for the welfare of the towns. Rev. Stats. 1866, tit. 7, § 31; 1821, tit. 103, § 6. But it has always been held that no by-law, though passed at an annual meeting, is valid, without a previous notice thereof in the warning.

In the leading case, decided in 1824, of *Hayden* v. *Noyes,* 5 Conn. 391, where the annual meeting of a town was warned to choose town officers, "and to do any other business then thought proper by said meeting," the Supreme Court of Errors decided that by-laws passed at that meeting, to regulate the shell fishery of the town, were void; and Chief Justice Hosmer, delivering judgment, said :

" By the act concerning towns, the mode of warning town meetings is specially prescribed. There is to be a notification in writing, ' specifying the objects for which they are to be held,' signed by the selectmen, and set upon the public sign post or posts in the town, at least five days before the meeting. A meeting not warned agreeably to the mode designated is no legal congregation of the town ; and its acts in that capacity are void. If the object be to regulate the clam and oyster fisheries, that object must be specified in the warning, in an intelligible manner. A notification to assemble a town meeting for a lawful purpose, duly specified, and to *do other*

*town business*, is, except as to the specification, as entirely exceptionable as if the town were warned to meet and do any business they should think proper. It is the purpose of the law, not to prescribe a frivolous form, but to give substantial information. If the object of the meeting is specified, it will present a motive to the inhabitants to be present, and they will leave business, even if it be pressing, provided they feel an interest in the subject to be determined. On the other hand, if the subject is unimportant, and any of the inhabitants should feel no concern in the result, they may with safety pursue their ordinary business; and this certainly is matter of convenience." "The warning, in the case before us, neither conforms to the words nor spirit of the law, and, if sanctioned, would repeal the statute." 5 Conn. 395, 396.

In a similar case in 1830, that decision was followed, and it was adjudged, reversing the judgment of a lower court, that it was incumbent on the party offering the vote of the town in evidence, and seeking to avail himself of it, to prove that the meeting was duly warned, although the vote purported on its face to have been passed by the town "in legal meeting assembled;" and the court said: "The borough and the town are, confessedly, inferior corporations. They act not by any inherent right of legislation, like the legislature of the State; but their authority is delegated; and their powers, therefore, must be strictly pursued. *Within* the limits of their charter, their acts are valid; *without* it, they are void. It having been established, in the case of *Hayden* v. *Noyes*, above cited, that to render an act of a town, precisely of this character, valid, it must appear that the meeting of the town had been specially warned for that purpose; and this not appearing on the doings of the town, in this case, nor from any proof *aliunde* to establish the fact, the judgment is erroneous. Perhaps it should appear on the face of the proceedings; but, at least, he who seeks to enforce the act should prove such warning to have been given." *Willard* v. *Killingworth*, 8 Conn. 247, 254.

There is nothing in the later decisions of that court, which tends to shake the rules thus established.

In *Brownell* v. *Palmer*, 22 Conn. 107, the vote of the town,

which was presumed to be valid, without proof of the warning, was a vote passed at an annual meeting twenty-five years before, accepting a discontinuance in due form by the selectmen of an ancient highway, which was proved to have been disused ever since some time before that vote, and which there was strong ground therefore for presuming to have been discontinued. See *Avery* v. *Stewart,* 1 Cush. 496; *Fletcher* v. *Fuller,* 120 U. S. 534. In the case of a recent vote, the rule is otherwise. For instance, in *State* v. *Taff,* 37 Conn. 392, a vote of a town, fifteen years before, accepting the laying out of a highway by the selectmen, was held insufficient for want of any proof of the warning; and the highway was established upon the independent ground of dedication.

In *Isbell* v. *New York & New Haven Railroad,* 25 Conn. 556, the town clerk's record of the meeting at which the by-law in question was passed recited that the meeting was "legally warned and held for the purpose of making a by-law" upon the particular subject; and the case was thus reconciled with that of *Willard* v. *Killingworth,* above cited. The record made by the clerk in the performance of his legal duty was sufficient, and perhaps conclusive, evidence of the fact recorded. *Thayer* v. *Stearns,* 1 Pick. 109.

In *Society for Savings* v. *New London,* 29 Conn. 174, the sufficiency of the warning was not questioned.

In *Baldwin* v. *North Branford,* 32 Conn. 47, a vote passed upon an insufficient warning, and therefore invalid, was upheld because it had been ratified by the town at a subsequent meeting duly warned and held under a confirmatory act of the legislature.

The two remaining Connecticut cases, cited at the bar, were suits to compel towns to guarantee the bonds of a railroad corporation, in accordance with votes passed under authority conferred by statute.

In the one, the vote was passed at a meeting duly warned and held; and the decision was that the vote, as recorded by the town, taken in connection with the warning, which was also recorded, appeared to have been taken by ballot, as required by law, and that the town was estopped to show, by an

amendment of the record, made after the railroad corporation
and its contractors had acted upon the vote for three years,
that the vote was not so taken. *New Haven, Middletown &
Willimantic Railroad* v. *Chatham*, 42 Conn. 465. The case
is an exceptional one, depending on its peculiar circumstances.
Dillon Mun. Corp. § 164, note.

But in the other case, in which the warning, as recorded,
showed that it had been posted less than the requisite number
of days before the meeting at which the town voted to guar-
antee the bonds on certain conditions, it was adjudged that
the vote was invalid; and that the town was not estopped to
prove the defect in the warning, and the consequent invalid-
ity of the vote, by a recital in the record that the vote was
passed at a meeting "legally warned and held," or by subse-
quent proceedings, after the railroad corporation had substan-
tially complied with those conditions, by which the town,
under a warning to determine what disposition should be
made of the bonds of the railroad corporation held by the
town, and to pay interest on its bonds, and to take such ac-
tion as to secure the completion of the railroad, voted to let
the conditions of the former vote remain as they were. The
court said, "The assembled voters are without power to act
for or bind the town, unless they have been called together in
the statutory way and at the statutory time;" and also, after
observing that "every voter who read the call" for the second
meeting "might safely absent himself from the meeting in the
certainty that under the call it could not impose the burden of
a guarantee upon the town," added, "We cannot order the
town to guarantee any bonds, unless it is made clear that at a
lawful meeting, so called as to give the voters full knowledge
of its purpose, they have assumed the burden; it is not to be
placed upon them by inference." *Brooklyn Trust Co.* v. *He-
bron*, 51 Conn. 22, 29, 30.

It follows that the vote passed at the annual meeting of the
town of Bloomfield in 1868, purporting to authorize the town
treasurer to borrow money for the use of the town, was in-
valid, for want of any evidence that the subject was specified
in the warning. The statement in the record of the meeting,

that it was "legally warned," shows only that it had been duly warned for some purposes, not for what purposes.

The Circuit Court ruled that this vote did not of itself authorize the treasurer to borrow money; but submitted the vote, with the other evidence in the case, to the jury, as sufficient to authorize them to find either that the town had made him its general agent to borrow money, or that it had ratified his acts, or that it was estopped to deny their validity.

That evidence consisted only, 1st. Of forty-four notes made by the treasurer to sundry individuals after the passage of that vote; 2d. Of the reports made in print by the selectmen and treasurer to the annual meetings of the town from 1869 to 1878 inclusive, showing various sums received or paid "on town notes," and a gradually increasing "indebtedness of the town by notes;" and the records of those meetings, showing that in 1869 such reports were "read and accepted," and that in after years no action on them was taken by the town; 3d. Of a vote passed by the town in 1880, authorizing the selectmen to make notes in behalf of the town to take up and cancel certain memoranda of indebtedness, made by officers of the town, dated July 1, 1879, for money lent to the town by various persons; and the acts of the selectmen pursuant to that vote.

Any ratification of an act previously unauthorized must, in order to bind the principal, be with full knowledge of all the material facts. *Owings* v. *Hull*, 9 Pet. 607; *Bennecke* v. *Insurance Co.*, 105 U. S. 355. And no estoppel in pais can be created, except by conduct which the person setting up the estoppel has the right to rely upon, and does in fact rely and act upon. *Burgess* v. *Seligman*, 107 U. S. 20.; *Scovill* v. *Thayer*, 105 U. S. 143; *Brant* v. *Virginia Co.*, 93 U. S. 326.

The vote of those who attend a town meeting being of no validity against the town or its inhabitants, unless the object of the vote is set forth in the notice or warning of the meeting, the town can no more ratify an act afterwards, than authorize it beforehand, except by vote passed pursuant to a previous notice specifying the object. Without the indispensable prerequisite of such a notice, those present at a town

meeting have no greater power to bind the town indirectly by ratification or estoppel, than they have to bind it directly by an original vote.   *Marsh* v. *Fulton County*, 10 Wall. 676; *Daviess County* v. *Dickinson*, 117 U. S. 657; *Norton* v. *Shelby County*, 118 U. S. 425; *Pratt* v. *Swanton*, 15 Vt. 147; *Lander* v. *Smithfield School District*, 33 Maine, 239; *American Tube Works* v. *Boston Machine Co.*, 139 Mass. 5.

By the statutes of Connecticut, it is made the duty of the selectmen to superintend the concerns of the town, to adjust and settle all claims against it, and to draw orders on the treasurer for their payment, to keep a true and regular account of all the expenditures of the town, and to exhibit the same at the annual meeting; and it is the duty of the treasurer to receive all the money belonging to the town for taxes, fines, forfeitures, debts or otherwise, and to make an annual statement of the receipts of money into the treasury, and the expenditures, which shall be adjusted by the selectmen, and laid before the town at the annual meeting.   Rev. Stats. 1866, tit. 7, §§ 45, 67; 1821, tit. 103, § 8, tit. 105, § 20.   But neither the selectmen nor the treasurer have any general power to make contracts, to borrow money, or to incur new debts, in behalf of the town, except for particular objects having no relation to this case.   *Sharon* v. *Salisbury*, 29 Conn. 113; *Ladd* v. *Franklin*, 37 Conn. 53; *Goff* v. *Rehoboth*, 12 Met. 26.

The reports made by the selectmen and the treasurer to the annual meetings, in performance of the duties imposed upon those officers by statute, were not, unless expressly approved or acted on by the town at a meeting duly held upon sufficient warning, evidence to charge the town with liability for debts which those officers had no authority to contract.   The only reports of the selectmen and treasurer upon which the town took any action were those of 1869.   The acceptance by the town of those reports might be a ratification of the debts and payments therein stated, but could have no further effect. *Burlington* v. *New Haven & Northampton Co.*, 26 Conn. 51; *Benoit* v. *Conway*, 10 Allen, 528; *Dickinson* v. *Conway*, 12 Allen, 487; *Arlington* v. *Pierce*, 122 Mass. 270; *Bean* v. *Hyde Park*, 143 Mass. 245.   In *Kinsley* v. *Norris*, 60 N. H.

131, cited for the plaintiff, the town, under an appropriate article in the warrant, had voted not only to accept the report of the doings of an agent, but also to give him additional powers.

There is nothing in the case at bar, which tends to show that any of the promissory notes to individuals, offered in evidence, or of the notes mentioned in the annual reports of the selectmen and treasurer accepted by the town in 1869, or in the vote of the town in 1880, were held by the plaintiff. The bill of exceptions explicitly states that no evidence was offered that the town in town meeting assembled knew that its treasurer kept his bank account with the plaintiff, or was borrowing of the plaintiff the money represented by the notes in suit, or by notes of which these were renewals; and also states that the plaintiff disclaimed any advantage by virtue of being the indorsee, instead of being the payee, of the notes in suit.

The bill of exceptions does state that it appeared by the evidence that the plaintiff, from the beginning of its account with Mills as treasurer, "supposed or thought that Mills was authorized to borrow money for the use of the town and give its notes therefor." But it contains nothing tending to show that the supposition was based upon anything but false representations of the treasurer, which would not bind the town. *Railroad Bank* v. *Lowell*, 109 Mass. 214; *Agawam Bank* v. *South Hadley*, 128 Mass. 503. Nor was there any evidence that the plaintiff, at the time of lending money to the treasurer, knew of any acts of the town or of the selectmen since the vote of 1868; and the vote of 1880, and the acts of the selectmen under it, took place after the notes in suit had been made and delivered to the plaintiff, and therefore could not have influenced it in taking them.

Upon the whole case, there was no proof of original authority, or of subsequent ratification, or of estoppel, to bind the defendant town; none of original authority, for want of any vote passed pursuant to due notice in the warning; none of ratification, for the same reason, as well as because it was not shown that the acts proved were done with intent to ratify the acts of the treasurer in issuing the notes sued on, or with

knowledge of all the material facts attending their issue; none of estoppel, because there was no evidence of any acts of the town, which the plaintiff had a legal right to rely upon, or did in fact rely upon, in taking these notes. The jury having been instructed otherwise, the

> *Judgment must be reversed, and the case remanded to the Circuit Court with directions to set aside the verdict and to order a new trial.*