LITTLE RIVER TOWNSHIP, RENO COUNTY v. THE
BOARD OF COUNTY COMMISSIONERS OF THE COUNTY
OF RENO et al.

No. 12,114.   (68 Pac. 1105.)

SYLLABUS BY THE COURT.

1. MUNICIPAL BONDS—*Effect of Act of 1887.* Chapter 77, Laws of
1887, neither amends nor repeals section 13 of chapter 107, Laws
of 1876. Both provisions stand and both are operative.

2. ———— *Contracts between Public Corporations—Power of
Legislature.* A public corporation can acquire no vested con-
tract rights as to the time of maturity or payment of bonds held
by it against another public corporation. Public debts are mat-
ters of public concern, and, as between debtor and creditor, both
being public corporations, the legislature may, by proper enact-
ment, compel the creditor corporation to accept payment before
maturity of the obligation held by it. Such acts do not, as be-
tween public corporations, impair the obligation of contracts.

Original proceeding in mandamus.   Opinion filed
May 10, 1902.   Judgment for the relator.

*Overmyer, Mulvane & Gault, Kelley & Foote,* and *James
McKinstry,* for relator.

*Carr W. Taylor,* county attorney, *J. U. Brown, George
A. Vandeveer,* and *F. L. Martin,* for respondent.

The opinion of the court was delivered by

GREENE, J. :   This is an original proceeding in man-
damus by Little River township, of Reno county, Kan-
sas, against John A. Myers, Irving Rutledge, and H.
C. Barrett, members of the board of county commis-
sioners of Reno county, the board of county commis-
sioners of Reno county, and C. A. Ryker, county
treasurer, to surrender and deliver for payment and
cancelation to the National Bank of the Republic, the
Kansas state fiscal agency in New York, forty-six

bonds, in the sum of $500 each, issued by the township of Little River on the 1st day of December, 1887, to the Kansas Midland Railway Company.

The subscription was made September 3, 1886, and the only statute in force at that time bearing upon the payment was section 13 of chapter 107, Laws of 1876, which reads:

"The principal of the bonds of such county, township or city shall be made payable at any time that may be fixed in the proposition voted upon, not exceeding thirty years from their date; and may be issued in sums of not less than one hundred dollars nor more than one thousand dollars."

In 1887, intervening the subscription and delivery of the bonds, the legislature passed chapter 77, Laws of 1887, section 1 of which reads:

"All bonds hereafter issued by the boards of county commissioners, township board, or by the authorities of incorporated cities, to railroad corporations, shall be redeemable at the pleasure of the board of county commissioners, or authorities issuing the same, at any time after ten years from the date of their issue."

The bonds recite that they are issued pursuant to the subscription and are payable in thirty years. The defendants contend: (1) That the act of 1887 is violative of section 16 of article 2 of the constitution, in that it undertakes to amend said section 13 of chapter 107, Laws of 1876, and does not contain the section so amended, or any proper reference thereto; (2) that the subscription is the contract between the parties, and, as it was made prior to the passage of the act of 1887, that act can have no application; but, if intended to apply to this case, it is unconstitutional in that it impairs the obligations of the contract.

There are some other questions presented by defendants, such as the insufficiency of notice of the in-

tention of the township to redeem and the source from
which it derived its funds.   These, however, are not
material or controlling in the case, are not of public
importance, and are not sufficiently material to re-
quire further notice than to say that, upon examina-
tion, they are overruled.

With the view the court has taken of this case, there
are but two questions for determination : (1) Is the
law of 1887 in contravention of section 16 of article 2
of the constitution?   (2) As applied to this contro-
versy, does it impair the obligation of contracts ?

We think there is no reason for the first contention.
The act of 1887 does not directly, or by implication,
repeal section 13 of chapter 107, Laws of 1876.   The
latter act is separate from and independent of the
former.   It was intended that both should stand and
both be operative.   Section 13 provides only for the
means and methods of determining the time when the
bonds may be made payable, not exceeding thirty
years, while section 1 of the act of 1887 authorizes
municipalities to redeem their outstanding obligations
at their option any time after the expiration of ten
years.   We think the latter act falls fully within the
statements made in *The State, ex rel., v. Cross*, 38 Kan.
700, 17 Pac. 190, where it was said : "At least, the ob-
jects of the acts have relation and connection with
each other ; and therefore we think they are capable
of being united in one act."   This contention must
be decided against the defendants.

The second proposition is the important and con-
trolling question in this case.   The policy of the state
as expressed in the act of 1887 is to enable its several
municipalities to reduce their bonded indebtedness,
even before maturity.   If the county, the defendant
in interest in this case, as the holder of the unma-

tured bonds of the relator, is exempt therefrom it must be because of some obvious and well-defined reason. The parties to this action are both public corporations and are both governmental departments of the state. Their relations to one another are matters of state policy, and their powers and duties are under the control and general supervision of the state, and are determined by the legislature. Their duties are public. In the present instance the county has no private rights to protect. As stated in its answer, it invested the sinking-funds then in its treasury in the bonds. This fund did not belong to the county but to the various public corporations within its jurisdiction. It could only do this by authority of the legislature, and in performing this act it was only doing what the policy of the state had determined to be beneficial to the people. The indebtedness of municipalities is a matter of public concern and a proper subject of legislation, and in adjusting the relations between two municipalities within the state, and providing for the payment of municipal debts, the legislature has unlimited and absolute control. One municipality can acquire no vested contract right as to the time of payment of the indebtedness of another, free from the subsequently expressed will of the legislature. Mr. Beach, in his work on Public Corporations, section 723, says:

"The power of appropriation which a legislature can exercise over the revenues of the state for any purpose, which it may regard as calculated to promote the public good, it can exercise over the revenues of a county, city, or town, for any purpose connected with the present or past condition, except as such revenues may, by the law creating them, be devoted to special purposes."

Municipalities are creatures of the legislature. It

can make or destroy them at pleasure. It may prohibit them from creating an indebtedness of any kind. It has the power to determine the kind, amount and duration of their liabilities. It may compel them to levy a tax for the payment of outstanding liabilities even before maturity, and, if their debts are represented by bonds in the hands of another municipality, it may compel such corporation to accept payment even before maturity. As between public corporations, this takes away no vested rights, nor does it impair the obligation of contracts. (*State, ex rel. St. Louis Police Comm'rs, v. St. Louis Co. Court*, 34 Mo. 546.)

When the county, under the authority conferred upon it, invests the sinking-fund in its treasury, which belongs to the various townships and school districts within its limits, it does so not only subject to the law then in existence, but subject as well to any law that may be passed subsequently thereto with reference to the payment of such indebtedness. In performing such acts, it acts as the agent of the state, created for the purpose of carrying out the objects of state policy.

"The revenues of a county are not the property of the county in the sense in which the revenue of a private corporation is regarded; and the power of the legislature to direct its application is plenary. A county being a public corporation, which exists only for public purposes, connected with the administration of the state government, it follows that such a corporation, and of course its revenue, is subject to the control of the legislature, and when the legislature directs the application of its revenue to a particular purpose, or its payment to any party, a duty is imposed and an obligation created upon the county." (Beach, Pub. Corp. § 722.)

All apparent difficulties disappear when we make a

proper distinction between public municipal corporations and private corporations or individuals.    It was said in *The State v. County of Shawnee*, 28 Kan. 431, 434 :

"And, finally, we remark that counties are purely the creation of state authority.    They are political organizations, whose powers and duties are within the control of the legislature.    That body defines the limits of their powers, and prescribes what they must and what they must not do.    It may prescribe the amount of taxes which each shall levy, and to what public purpose each shall devote the moneys thus obtained.    It may require one county to build a certain number of bridges at certain specified places, and of a particular size and quality.    It may require another to open roads in given localities ; and another to build a court-house, and to levy a tax to a prescribed amount for the purpose of paying therefor.    In short, as a general proposition, all the powers and duties of a county are subject to legislative control ; and provided the purpose be a public one, and a special benefit to the county, it may direct the appropriation of the county funds therefor in such manner and to such amount as it shall deem best."

It was said in *The State v. Atkin*, 64 Kan. 174, 67 Pac. 519, 520, quoting from Judge Dillon :

"Municipal corporations owe their origin to and derive their powers and rights wholly from the legislature.    It breathes into them the breath of life, without which they cannot exist.    As it creates, so it may destroy.    If it may destroy, it may abridge and control.    Unless there is some constitutional limitation on the right, the legislature might by a single act, if we can suppose it capable of so great a folly and so great a wrong, sweep from existence all of the municipal corporations in the state, and the corporations could not prevent it.    We know of no limitation on this right so far as the corporations themselves are concerned.    They are, so to phrase it, the mere tenants at will of the legislature."

What would be the rights of the railroad company or of an individual holding these bonds, as against the township, are matters that have no application, and are not of consequence in this case.   It follows, therefore, that since the·parties to this action are both public corporations, and neither can have a vested contract right in the time of payment of the indebtedness of the other, which may not be interfered with by the supreme power, the legislature, and since the policy of the state, as expressed in the act of 1887, is that its public corporations may pay their indebtedness before maturity, this act does not impair the obligation of the contract.

It is the decision of this court that the relator have judgment for costs, and that the defendants deliver the bonds in question for payment and cancelation to the fiscal agency in the city of New York, as prayed for in the application.

SMITH, CUNNINGHAM, POLLOCK, JJ., concurring.