# UNION DRY GOODS COMPANY *v.* GEORGIA PUBLIC SERVICE CORPORATION.

1. Where the legislature confers upon the Railroad Commission the power to fix maximum rates for service rendered to the public by individuals or corporations engaged in a public service, the maximum rates fixed by the commission are presumptively reasonable, and public-service companies may demand such maximum rates.

2. If a patron of a public-service corporation, furnishing electrical power and light, sees fit to make a contract covering a definite period of time, where no rates have been prescribed by the railroad commission, he will be taken to have done so subject to subsequent schedules of rates lawfully prescribed by the commission.

(a) Constitutional restraints upon the impairment of the obligation of contracts do not prevent the State from exercising such powers as are necessary in the exercise of its sovereign right to protect the lives, health, morals, comfort, and general welfare of the public, though contracts previously entered into between individuals may thereby be affected.

3. The Railroad Commission act of 1907 (Acts 1907, p. 72), giving to the commission jurisdiction over electrical lighting and power companies, and the order of the commission fixing maximum rates in the instant case, are not void as in opposition to the clauses in the Federal and State constitutions prohibiting the passage of any ex post facto law, or law impairing the obligation of contracts, or the taking of property without due process of law, or for a public use without just compensation.

4. Nor do the fifth and sixth sections of the Railroad Commission act of 1907 (Civil Code of 1910, §§ 2662, 2663) violate art. 1, sec. 4, par. 1, of the constitution of Georgia, forbidding special legislation in a case already provided for by an existing general law, and declaring that "no general law affecting private rights shall be varied in any particular case by special legislation, except with the free consent, in writing, of all persons to be affected thereby."

DECEMBER 17, 1914.

Petition for injunction.   Before Judge Mathews.   Bibb superior court.   April 20, 1914.

*Feagin & Hancock,* for plaintiff.

*Guerry & Son, Roland Ellis,* and *C. A. Glawson,* for defendant.

EVANS, P. J.   The Union Dry Goods Company, a mercantile corporation, doing business in the City of Macon, contracted with the Georgia Public Service Corporation to supply it with electrical power and light upon stipulated rates for the period of five years. At the time of the making of this contract there was neither statute nor rule of the Railroad Commission regulating rates for the service contracted for.   After the contract had run for more than a year (both parties complying therewith) the public-service company applied to the Railroad Commission of Georgia (having jurisdiction of electric-light and power companies) for an· increase in rates. The commission published an order declaring that the schedules of rates therein contained, until the further order of the commission, shall be the maximum schedules of rates to be charged by the Georgia Public Service Corporation for the classes of service indicated.   The maximum rates of these schedules are in excess of the rates fixed in the contract between the dry goods company and the public-service company.   The public-service company demanded payment of the dry goods company at the maximum rate fixed in the commission's order for service rendered since its promulgation; and the dry goods company seeks to enjoin the public-service company from discontinuing its service unless the difference between the contract rate and that demanded be paid for the service specified in the contract.   An interlocutory injunction was refused.

It appears that the commission also had under consideration, at the time the application of the Georgia Public Service Corporation was pending, the petition of the Macon Railway and Light Company for authority to increase lighting and power rates in the City of Macon.   Contemporaneously with the filing of the commission's order fixing a schedule of rates to be charged in the City of Macon, the commission filed an opinion, in which it was stated that the prescribed rates were just and reasonable, and that any outstanding contracts for rates lower than those prescribed must be abrogated, or the public generally put upon the same basis.   The commission's opinion was entitled in the name of the Macon Railway and Light Company; but as it referred to the schedules of rates applicable to

all public-service companies for power and light supplied in the City of Macon, we deem the opinion as relating to the order fixing the schedules of rates. The pivotal question is the effect of the commission's order on the contract between the dry goods company and the public-service company. Did it empower the Georgia Public Service Corporation to disregard the contract rate, and to charge for the service at the maximum rate allowed by the commission? The commission has no power to fix unreasonable rates, and therefore the maximum rates of the schedules are to be deemed, as declared by the commission in its opinion promulgating them, just and reasonable. Where the legislature confers upon a commission the power to fix reasonable rates for service rendered to the public by individuals or corporations engaged in a public service, the rates fixed by the regulating commission are presumptively reasonable. Reagan v. Farmers Loan &c. Co., 154 U. S. 362 (14 Sup. Ct. 1047, 38 L. ed. 1014). As the reasonableness of the commission's schedule of rates is not attacked, we will proceed, in the further discussion of the case, upon the premise that the maximum rates prescribed by the commission are just and reasonable.

Counsel for the plaintiff in error argue that the commission's order is not to be construed as fixing minimum rates, and hence it should not be given the effect of abrogating, or of giving the Georgia Public Service Corporation the power to abrogate, the lower rates of the contract, which were lawful when the contract was made. The commission was petitioned for an increase of rates for lighting and power service in the City of Macon. It fixed certain rates as reasonable. It is true that such rates were declared to be maximum. Nevertheless the power and light companies were authorized to exact the maximum rate, and the effect is the same as if the commission had simply declared that the rates were reasonable. We think that the scope of the order was to prescribe the rates specified in the schedule as just and reasonable.

We now approach the crux of the whole proposition: viz., the effect of the order prescribing a higher rate as reasonable upon the lower rate stipulated in the contract. In most of the cases of challenge against the right of a State or of Congress to alter a rate fixed by contract of the parties, the point was raised by a common carrier, in protest against the lowering of the contract rate by the legislature or body to which the power of rate regulation was dele-

gated. It is now universally conceded that a State legislature, or Congress, within their respective jurisdictions, has power to regulate common carriers, and that the power is not destroyed because such regulations may to some extent affect the power to contract, or existing contracts. *Railroad Com.* v. *L. & N. R. Co.,* 140 *Ga.* 817 (80 S. E. 327), and cases cited. As was said in Hudson County Water Co. *v.* McCarter, 209 U. S. 349, 357 (28 Sup. Ct. 529, 52 L. ed. 828, 14 Ann. Cas. 560) : "One whose rights, such as they are, are subject to State restriction, can not remove them from the power of the State by making a contract about them. The contract will carry with it the infirmity of the subject-matter." The carrier who has contracted for a higher rate has been denied that rate because it was in excess of a lesser rate prescribed by the proper rate-making body, and found to be reasonable. We see no reason why the rule should not be applied in favor of the carrier as well as against him; and we think the authorities sustain us in this position. In Armour Packing Company *v.* U. S., 209 U. S. 56 (28 Sup. Ct. 428, 52 L. ed. 680), the defendant had been indicted for accepting a rebate from the regular published rates of the carrier. His defense was that prior to the amendment of the interstate-commerce act he had contracted with the railroads to carry the commodities shipped by him at rates which were less than those which were subsequently established under the authority of the Interstate Commerce Commission. In the opinion Mr. Justice Day said: "If the shipper sees fit to make a contract covering a definite period for a rate in force at the time, he must be taken to have done so subject to the possible change of the published rate in the manner fixed by statute, to which he must conform or suffer the penalty fixed by law." In L. & N. R. Co. *v.* Mottley, 219 U. S. 467 (31 Sup. Ct. 265, 55 L. ed. 297, 34 L. R. A. (N. S.) 671), the railroad company contracted with a man and his wife who were injured while traveling on the road, in consideration of a release of their claim for damages, to issue free passes to them during their respective lives. Afterwards the interstate-commerce act was so amended as to make it unlawful for an interstate carrier to transport any person for a greater or less or different compensation than any other person, with certain exceptions. It was held, that, after the amendment of June 29, 1906, it was unlawful for a carrier to issue interstate transportation in pursuance of a prior ex-

isting contract to do so as compensation for injuries received, and, even though valid when made, such a contract could not be enforced against the carrier. In *City of Dawson* v. *Dawson Telephone Company*, 137 *Ga.* 62 (72 S. E. 508), a telephone company made application to a municipality for a franchise to operate a telephone system in the city. The application was accepted, provided the company, among other things, would agree to maintain particular rates and furnish free service to the several departments of the city government. The company accepted in writing the terms proposed in the ordinance, and began business under such franchise, and charged the rates specified in the ordinance. Subsequently the Railroad Commission of this State authorized an increase in the charge for telephone service. The city sought to enjoin the company from charging the rates permitted by the order of the commission. It was held, that the arrangement between the telephone company and the city did not deprive the Railroad Commission of their power to authorize an increase in the rates, and that the order of the commission was not violative of the constitutional inhibition against impairment of the obligation of contracts. To the same effect is State ex rel. Webster v. Superior Court of King County, 67 Wash. 37 (120 Pac. 861, 29 Ann. Cas. (1913D) 78). In deciding that the constitutional guaranty against impairment of the obligation of a contract does not apply to the exercise by a State of its police power, Mr. Justice Brown, speaking for the United States Supreme Court, said: "It is the settled law of this court that the interdiction of statutes impairing the obligation of contracts does not prevent the State from exercising such powers as are vested in it for the promotion of the common weal, or are necessary for the general good of the public, though contracts previously entered into between individuals may thereby be affected. This power, with its various ramifications, is known as the police power, is in exercise of the sovereign right of the government to protect the lives, health, morals, comfort, and general welfare of the people, and is paramount to any rights under contracts between individuals." Manigault v. Springs, 199 U. S. 473, 480 (26 Sup. Ct. 127, 50 L. ed. 274).

At common law, if public-service corporations served all at reasonable rates, they performed their obligation; but modern industrial conditions demand the further requirement that they shall

serve all with equality. They are usually clothed with the power of eminent domain, and this attribute of sovereignty converts them into quasi public institutions; and hence it has become the accepted modern doctrine that public-service companies must not only serve the public at reasonable rates, but shall also serve the public efficiently and without discrimination. 2 Wyman on Pub. Serv. Corp. §§ 1281, 1289, 1290. The public have a right to demand efficient service, and the Railroad Commission is given full power to require that the companies shall render efficient service. Civil Code (1910), § 2663. The service rendered may be commensurate with the price charged for such service, but such service may not meet the requirements demanded by the developments and growth of the city. It is possible to conceive a case where a large majority of a city prefer a more extensive service, and where the necessities of the municipal life demand an enlargement of the present service. The company is willing to meet the necessities of the case, provided a reasonable charge for the services rendered is permitted. The matter is submitted to the Railroad Commission. After full investigation the commission is of the opinion that an enlarged service is necessary and proper under the circumstances, and fixes a schedule of rates to be charged for the increased facilities. A few individuals may hold contracts binding the company to rates less than those fixed by the commission as reasonable. Ought the development and necessities of the municipality, in situations like this, be controlled by a contract with a few individuals; or shall it be considered that the case falls within the proper exercise of the police power in the interest of the common weal? Manifestly the public health, progress, morals, and general well-being of a municipality can not be bound up in a contract with a few individuals. Hence we think that when the Railroad Commission prescribed a reasonable rate for electrical lighting and power companies, the rate thus established had the effect of overriding the contractual rate between the public-service company and its patrons, made anterior to the commission's order.

It is urged that the act of 1907 (Acts 1907, p. 72), conferring power on the Railroad Commission to fix the rates of electric power and light companies, and the order of the commission, are void as being in opposition to the clauses of the Federal constitution prohibiting the passing of any ex post facto law, or law impairing

the obligation of contracts, and the taking of property without due process of law, or for public use without just compensation. It is further contended that similar provisions of the State constitution have been violated by the promulgation of this order. The foregoing discussion clearly demonstrates that the act of 1907 and the order of the commission are not in violation of these provisions of the Federal and State constitutions.

It is further insisted that sections 5 and 6 of the act of 1907, as codified in the Civil Code of 1910, §§ 2662, 2663, are unconstitutional, as being opposed to art. 1, sec. 4, par. 1, of the constitution of the State of Georgia, which declares that "Laws of a general nature shall have uniform operation throughout the State, and no special law shall be enacted in any case for which provision has been made by an existing general law. No general law affecting private rights shall be varied in any particular case by special legislation, except with the free consent, in writing, of all persons to be affected thereby;" the contention being, that at the time of the passage of the act of 1907 there was a general law (Civil Code (1910), § 2216) defining the common powers of all corporations, and authorizing them to hold property and to do all such acts as are necessary for the purposes of their organization, and a general law (Civil Code (1910), § 2234) permitting corporations creating electricity to make contracts, lease power, etc., to any person or corporation; and that sections 5 and 6 of this act would contravene these general sections, for the reason that they would curtail the power of this class of corporations in making contracts and holding property necessary to the purpose of their organization, and would not curtail the like rights and powers, under the general law, of those corporations which are not made subject to the jurisdiction of the Railroad Commission of Georgia. There is no merit in this contention. The power of the State to establish a railroad commission and to prescribe regulations for persons or corporations engaged in the service of the public is too well established to require demonstration. Such laws are in exercise of the police power, and do not run counter to general legislation pertaining to other matters.

*Judgment affirmed. All the Justices concur, except Fish, C. J., absent.*