## NOWATA COUNTY GAS CO. v. HENRY OIL CO.

(Circuit Court of Appeals, Eighth Circuit. November 22, 1920.)

No. 5566.

1. **Appeal and error ⬤⟲854(1)—Opinion of court not subject of review.**
Where an action at law is tried to the court without a jury, and no findings of fact are made, assignments of error cannot be based on the opinion of the court.

2. **Public service commissions ⬤⟲7—Prices fixed by contract with customers by public service corporations may be changed by state commission.**
The price fixed in a contract between a public service corporation and its customers may be changed, and a different rate fixed, by a public service commission created under the police power of the state, even though the contract was in existence before the state commission was created and given such authority.

3. **Public service commissions ⬤⟲7—Jurisdiction of public service commission.**
Laws Okl. 1913, c. 93, creating a state corporation commission, to "have general supervision over all public utilities, with power to fix and establish rates," etc., confers power only to fix rates to be charged by such utilities to their customers, and has no relation to prices to be paid by a public utility for a commodity furnished by it to the public, and the commission is without jurisdiction over such prices, where the seller is not charged with any duty to the public.

4. **Gas ⬤⟲1—Natural gas company, selling product to other corporations, not a "public utility," subject to the public service commission.**
A corporation owning and operating gas wells, and selling its product to industries and public service corporations, *held* not a "public utility," within the Constitution and statutes of Oklahoma, and not subject to the authority of the State Corporation Commission.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Public Utility.]

5. **Gas ⬤⟲14(1)—Contract for gas not abrogated by action of State Corporation Commission.**
Order made by State Corporation Commission in a controversy between plaintiff, a public service gas company, and defendant, from which plaintiff purchased, under contract, the gas which it distributed to customers which merely required defendant to furnish gas to plaintiff for an "adequate" price, without fixing a price, *held* to leave the price stipulated in the contract in effect.

6. **Estoppel ⬤⟲58—Acts must be to prejudice of other party.**
To create an equitable estoppel, it is necessary that the party sought to be estopped by his conduct induced the other party to act on it to his detriment.

7. **Gas ⬤⟲13(3)—Statute held not to excuse breach.**
In an action against a natural gas company for breach of a contract to supply plaintiff with gas, Act Okl. March 26, 1913 (Laws 1913, c. 99), prohibiting operators of gas wells from taking therefrom more than 25 per cent. of their daily natural flow, *held* not to constitute a defense, where defendant continued to furnish gas under the contract for three years after enactment of the statute, and discontinued only because plaintiff refused to pay more than the contract price.

8. **Pleading ⬤⟲372—Defense not raised by pleadings not in issue.**
A defense not pleaded, nor raised by any facts pleaded, is not within the issues, and cannot be considered.

⬤⟲For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**9. Monopolies ⊂⇒13—Statute regulating production from gas wells held not to apply to nearly exhausted field.**

The provision of Act Okl. March 30, 1915 (Laws 1915, c. 197), § 5, prohibiting common purchasers from discriminating between producers of natural gas, the purpose of which is to prevent one producer, by obtaining an advantage, from excluding others, and draining their lands, *held* not to apply to a practically exhausted field, where the only producing wells are located in isolated pockets.

In Error to the District Court of the United States for the Eastern District of Oklahoma; Joseph W. Woodrough, Judge.

Action at law by the Nowata County Gas Company against the Henry Oil Company. Judgment for defendant, and plaintiff brings error. Reversed.

Halbert H. McCluer and Charles A. Loomis, both of Kansas City, Mo., for plaintiff in error.

Philip Kates, of Tulsa, Okl., and John J. Jones, of Wichita, Kan., for defendant in error.

Before HOOK and STONE, Circuit Judges, and JOHNSON, District Judge

JOHNSON, District Judge. The plaintiff in error, a public service corporation, was engaged in the business of furnishing natural gas to the citizens of the city of Nowata, Okl., for lighting and heating purposes. It obtained the gas which it supplied to its customers from the defendant in error, the Henry Oil Company, at the wells of the defendant company in the Hogshooter district, situated a few miles southwest of the city of Nowata, under a contract entered into by the parties in 1906, by which the defendant company agreed to furnish to the plaintiff certain specified quantities of gas for a period of 13 years at the rate of 2 cents per 1,000 cubic feet of gas.

The defendant, in February, 1916, ceased to supply the plaintiff with gas, because the plaintiff would not agree to pay for the gas to be thereafter supplied at the rate of 8 cents per 1,000 cubic feet, instead of 2 cents per 1,000 cubic feet, as provided in the contract. From February, 1916, until September, 1917, the plaintiff obtained gas from the Quapaw Gas Company to supply its needs, and paid for the same at the rate of 10 cents per 1,000 cubic feet, the market value thereof, and thereafter brought suit in the court below to recover damages from the defendant for breach of said contract.

The case was tried by the court without a jury, and judgment entered in favor of defendant, dismissing plaintiff's complaint. Unless one or more of the defenses hereinafter mentioned prevent a recovery, the plaintiff, under the undisputed evidence in the case, was entitled to a judgment in its favor.

At the conclusion of the evidence the plaintiff requested the court to give certain declarations of law in its favor, one of which was a general declaration of law that the plaintiff was entitled to recover. This request of the plaintiff for a general declaration of law in its favor, with others, was refused by the court. Plaintiff excepted to the refusal of

the court to give the directed declarations of law requested by it, and has assigned the same as error.

[1] The trial court made no findings of fact, but delivered an opinion, which appears in the record, and plaintiff has made numerous assignments, based upon the views expressed by the court in its opinion, and has also assigned as error the judgment of the court dismissing the complaint. No question for review is raised by these assignments. Mason v. U. S., 219 Fed. 547, 135 C. C. A. 315; U. S. v. Porter Fuel Co., 247 Fed. 769, 159 C. C. A. 627.

It is not necessary to state the assignments of error relied upon by the plaintiff which can be considered, other than the assignment of the refusal of the court to give a general declaration of law in its favor, as this assignment raises for review every question discussed by the parties and necessary to this decision.

The defenses relied upon to sustain the judgment of the trial court dismissing plaintiff's complaint will be considered under the following heads:

(1) That the order made in December, 1915, by the Corporation Commission of the state of Oklahoma, in a proceeding before said commission between the parties to this suit, annulled and set aside the price to be paid in said contract of 2 cents per 1,000 cubic feet of gas, and authorized the defendant to charge, and required the plaintiff to pay, 10 cents per 1,000 cubic feet, and that said order is res adjudicata of the matters in issue in this suit.

(2) That, assuming for any reason the said order to be invalid, the plaintiff, nevertheless, is estopped to assert its invalidity or to maintain this action upon the contract, by reason of having initiated before said Corporation Commission the above-mentioned proceeding.

(3) That, assuming for any reason the said order to be invalid, the plaintiff is, nevertheless, estopped to assert its invalidity or to maintain this action upon the contract, by reason of a former proceeding commenced by it against the defendant before said commission.

(4) That the judgment of the court below, dismissing the action, should be affirmed under the evidence and the provisions of section 9 of the act of the Legislature of the state of Oklahoma approved March 26, 1913 (Laws 1913, c. 99), which act reads as follows:

"Every corporation, joint-stock company, limited copartnership, partnership or other person, now, or hereafter claiming or exercising the right to produce natural gas or to carry or to transport natural gas through pipe line or pipe lines, for hire, compensation, or otherwise within the limits of this state, is allowed by, and upon compliance with the requirements of this act, as owner, lessee, licensee, or by virtue of any other right or claim is hereby prohibited from taking more than twenty-five (25) per cent of the daily natural flow of any gas well or wells unless for good cause shown, under the exigencies of the particular case the Corporation Commission shall establish a different per centum under the prescribed rules and regulations therefor."

(5) That the judgment of the court below dismissing the action should be affirmed under the evidence and the provisions of section 3 of said act which reads as follows:

"Every corporation * * * now or hereafter claiming or exercising the right to carry or transport natural gas by pipe line or pipe lines, for hire,

compensation, or otherwise * * * which is now engaged or hereafter shall engage in the business of purchasing natural gas shall be a common purchaser * * * and such common purchasers are hereby expressly prohibited from discriminating in price or amount for like grades of natural gas or facilities as between producers or persons"

—and of section 5 of the act of the Legislature of said state approved March 30, 1915 (Laws 1915, c. 197), which reads:

"That every person, firm or corporation, now or hereafter engaged in the business of purchasing and selling natural gas in this state, shall be a common purchaser thereof, and shall purchase all of the natural gas which may be offered for sale * * * without discrimination in favor of one producer as against another, or in favor of any one source of supply as against another."

These several defenses will be considered in their order. Assuming for the moment that the order of the Corporation Commission referred to in the first defense is sufficient in form and in substance, its validity depends upon the jurisdiction or authority of the commission to make it.

[2] It is well settled that the price fixed in a contract between a public service corporation and a customer or patron may be changed, and a different rate fixed, by a public service commission created under the police power of the state. This is true, even though such contract (as was the fact in this case) was in existence before the creation by the state of a commission authorized to fix rates to be charged by public service corporations or public utilities. Raymond Lumber Co. v. Raymond Light & Water Co., 92 Wash. 330, 159 Pac. 133, L. R. A. 1917C, 574; Manitowoc v. Manitowoc & N. T. Co., 145 Wis. 13, 129 N. W. 925, 140 Am. St. Rep. 1056; Kansas City, B. & N. Co. v. K. C. L. & P. Co., 275 Mo. 529, 204 S. W. 1074; Union Dry Goods Co. v. Georgia Pub. Ser. Corp., 142 Ga. 841, 83 S. E. 946, L. R. A. 1916E, 358; Minneapolis, etc., v. Menasha Woodenware Co., 159 Wis. 130, 150 N. W. 411, L. R. A. 1915F, 732; Pinney & Boyle Co. v. Los Angeles G. & E. Corp., 168 Cal. 12, 141 Pac. 620, L. R. A. 1915C, 282, Ann. Cas. 1915D, 471; V. S. Bottle Co. v. Mountain Gas Co., 261 Pa. 523, 104 Atl. 667; Public Utilities Com. of Kansas v. Wichita R. & L. Co. (C. C. A.) 268 Fed. 37 (decided this term by this court); Munn v. Illinois, 94 U. S. 113, 24 L. Ed. 77; C., B. & Q. R. R. Co. v. Nebraska, 170 U. S. 57, 18 Sup. Ct. 513, 42 L. Ed. 948; Manigault v. Springs, 199 U. S. 473, 26 Sup. Ct. 127, 50 L. Ed. 274; Portland Ry. L. & P. Co. v. R. R. Com. of Oregon, 229 U. S. 397, 33 Sup. Ct. 820, 57 L. Ed. 1248; Chicago & Alton R. R. Co. v. Tranbarger, 238 U. S. 67, 35 Sup. Ct. 678, 59 L. Ed. 1204; Union Dry Goods Co. v. Georgia Pub. Ser. Corp., 248 U. S. 372, 39 Sup. Ct. 117, 63 L. Ed. 309; Producers Trans. Co. v. R. R. Com., 251 U. S. 228, 40 Sup. Ct. 131, 64 L. Ed. 239.

The order of the Corporation Commission of Oklahoma, under consideration, does not fix, nor purport to fix, a rate to be charged by the plaintiff as a public service corporation or public utility, and to be paid by the public; but, granting that it fixes a rate at all, it establishes a rate or price to be paid by the plaintiff to the defendant for gas furnished it by the defendant.

[3] Our attention has not been called to any decision by any court which holds that under the police power the state may create an admin-

istrative body or commission with authority to fix or establish prices to be paid by a public utility for things purchased and used by it, or, as in this case, for a commodity furnished by it to the public.

It is unnecessary to consider the question above suggested, as the law of the state of Oklahoma conferring jurisdiction on the Corporation Commission over public utilities does not attempt to confer such authority. The statute (section 2, chapter 93, Session Laws 1913) reads as follows:

"The commission shall have general supervision over all public utilities, with power to fix and establish rates and to prescribe rules, requirements and regulations, affecting their services, operation, and the management and conduct of their business."

Taken in connection with the other provisions of the statute creating the commission and defining its powers, it seems clear that the Legislature conferred, and only intended to confer, authority to fix the rates to be charged by a public utility and paid by its patrons for the thing furnished or the service rendered by it to the public.

[4] The order of the commission fixing, or attempting to fix, the price to be paid by the plaintiff for gas thereafter to be supplied by the defendant to the plaintiff, and by it furnished to the public, cannot be upheld on the ground that the plaintiff was a public service corporation or public utility. If the order of the commission cannot be sustained upon some other ground, it is null and void, and constitutes no defense to the suit of the plaintiff for damages for breach of the contract.

The commission had authority to fix the rates to be paid by the plaintiff for gas furnished it by the defendant, notwithstanding the contract, if the defendant, the Henry Oil Company, in supplying gas to the plaintiff, was acting in the capacity of, or exercising the functions of, a public utility. The expression "public utility" characterizes the business, rather than the owner of the business, and in order that a business shall be a public utility it must in some way be impressed with a public interest. One of the earliest and the leading case upon the subject is Munn v. Illinois, supra, in which it is said:

"Property does become clothed with a public interest when used in a manner to make it of public consequence, and affect the community at large. When, therefore, one devotes his property to a use in which the public has an interest, he, in effect, grants to the public an interest in that use, and must submit to be controlled by the public for the common good to the extent of the interest he has thus created. He may withdraw his grant by discontinuing the use; but, so long as he maintains the use, he must submit to the control."

In Pinney & Boyle Company v. Los Angeles G. & E. Corporation, supra, it is said:

"It is the duty which the purveyor or producer has undertaken to perform on behalf of and so owes to the public generally, or to any defined portion of it, as the purveyor of a commodity, or as an agency in the performance of a service, which stamps the purveyor or the agency as being a public service utility."

In State ex rel. M. O. Danciger & Co. v. Pub. Ser. Com. of Mo., 275 Mo. 496, 205 S. W. loc. cit. 40, the Supreme Court of the state of Missouri, in discussing this question, said:

"State regulation of private property can be had only pursuant to the police power, which power is bottomed on and wholly dependent upon the devotion of private property to a public use. If the requirement that the private property shall be devoted to a public use, before it can be regulated, and before inquisitorial authority be exercised over it, is not to be read into the applicatory law, then that law is obviously unconstitutional, because it takes private property for public use without compensation."

From the evidence it appears the defendant is a corporation organized under the laws of South Dakota. It held leasehold interests in numerous parcels of land situated in the gas field above mentioned. In the development of these lands for natural gas it drilled altogether 45 wells. Between 1906 and 1916 it produced and disposed of large quantities of natural gas to seven customers, of which the plaintiff was one. The plaintiff, as already stated, was a public service corporation supplying gas to the people of the city of Nowata. The other customers of the defendant were industrial concerns, some of them perhaps public utilities, located at Bartlesville, a few miles west of the gas field. All of the gas produced by the defendant was disposed of by it to all of its customers, except one, at its wells in the gas field. The gas furnished by the defendant to one of its customers was delivered at Bartlesville through a pipe line owned and operated by another company, known as the Henry Gas Company. The fact that this pipe line was not owned or operated by the defendant company is of no great importance. It does not appear from the record that in the construction of the pipe line the owner exercised, or attempted to exercise, the right of eminent domain, or that it has any franchise in respect to said pipe line from the city of Bartlesville or other public municipality.

During a large part of the time that the defendant was delivering gas to the plaintiff at the rate of 2 cents per 1,000 cubic feet, it was delivering gas to its other customers at rates ranging from 2½ cents to 5 cents per 1,000 cubic feet. Applying the principles of law announced in the foregoing cases to the facts in this case, we do not think the business in which the defendant was engaged constituted it a public utility, or that it is a public utility under the Constitution and acts of the Legislature of the state of Oklahoma creating and defining public service corporations or public utilities.

[5] If the defendant company was not a public utility, the commission was without authority to fix rates to be charged by it and paid the plaintiff company. Assuming that the order is sufficient in form and in substance, it is in any event null and void, and constitutes no defense to the suit of the plaintiff for damages for breach of the contract. If we assume that the commission had authority to fix the price of the gas furnished or to be furnished by the defendant to the plaintiff, the question remains whether or not the order made by the commission did in fact fix a price. The order reads:

"Wherefore, the premises considered, and the commission being fully advised, it is considered, ordered, adjudged, and decreed that the parties hereto proceed to carry out the directions above contained; that the defendant com-

pany furnish gas in sufficient quantity for necessary use at Nowata and sufficient pressure to enable the convenient use and handling thereof, and not less than the pressures heretofore indicated; that the Citizens' Gas Company accept this gas and pay an adequate price therefor, and both companies, under the conditions and directions herein contained, carry out each one its necessary part in supplying gas sufficient for distribution by the plant of the complainant company, in accordance with the needs of and comfort of its patrons."

It is self-evident that an order requiring the payment of an "adequate price" fails to fix or establish a definite price to be charged by the defendant and paid by the plaintiff. It is apparent from the findings made by it that the commission intended only to use its good offices in bringing the parties together for negotiation and voluntary settlement of their differences. The commission in its findings definitely disclaims any intention of fixing a rate. It says:

"Nor does it care, unless such action becomes necessary, to say precisely what the Citizens' Gas Company [the plaintiff] shall pay the defendant company for gas."

Not having fixed a rate or a price to be paid by the plaintiff and charged by the defendant, the price stipulated in the contract continued in effect. Kaul v. American, etc., Co., 95 Kan. 1, 146 Pac. 1130. The alleged order of the commission is therefore no defense to plaintiff's action.

[6] The defense based upon the plea of estoppel cannot be sustained. In the recent case of Bush v. Branson, 248 Fed. 384, 160 C. C. A. 394, this court said:

"In order to create an estoppel, it is necessary that the party sought to be estopped by his conduct induced the other party to act on it to his detriment, or, as said in Bloomfield v. Charter Oak Bank, 121 U. S. 121, 135, 7 Sup. Ct. 865, 872 (30 L. Ed. 923): 'No estoppel in pais can be created, except by conduct, which the person setting up the estoppel has the right to rely upon, and does in fact rely and act upon.'"

It is not alleged in the answer, nor does it appear by the proof submitted in the case, that the defendant was induced by the commencement of the proceedings, or either of them, by the plaintiff before the Corporation Commission, to act at any time relying thereon to its detriment.

[7] The statute quoted in the fourth defense, prohibiting the taking of more than 25 per cent. of the daily natural flow of any gas well, is within the police power of the state and a valid law. Ohio Oil Co. v. Indiana, 177 U. S. 190, 20 Sup. Ct. 576, 44 L. Ed. 729. The statute, however, has no application to the facts in this case. When natural gas is permitted to flow freely, it tends to drain the gas from the underlying sands in the neighborhood of the well too rapidly, with the result that the water below the gas sands finds its way up towards the outlet of the gas at the base of the well, cuts off the lateral inflow of the gas, and drowns the well. If the outflow of the gas is under pressure, the lateral flow towards the well will be more extensive and long continued, and in the end the gas will be more completely removed from the gas sands, and the gas field more thoroughly exhausted.

The evidence shows that the gas field known as the Hogshooter dis-

trict, in which the wells of the defendant were located, was about 12 miles in length and from 1 to 2 miles wide. In the years 1910, 1911, and 1912, the period of maximum production, the field was being exploited by six or seven pipe line companies. Beginning with 1912 the gas supply began to decrease, and in 1913 the field was considered by practical gas men as exhausted. Of the 45 wells drilled by the defendant, only 6 remained in operation in 1915; the others having been drowned by the rising of the underground water. Of the pipe line companies theretofore exploiting the field, in 1915 only two remained, the defendant and the Quapaw Company. As early as 1913 the defendant had established a pumping station for the purpose of pumping gas to its several customers. In 1914 the pipe line of the plaintiff was connected with this pump station. A pump station is used either to accelerate the flow of the gas from the sands below or to increase the pressure under which the gas is delivered to customers. The rock or natural pressure of the gas at defendant's wells in operation had greatly decreased, as had the pressure at all the wells in this district, at the time of the installation of the pump station above mentioned.

It is quite clear from the evidence that the field after 1913 was rightfully considered an exhausted field, although after that time a few old wells continued in operation and a few new ones were developed by drilling into gas pockets. It is practically conclusive from the evidence that the various producing wells during this period were in pockets of gas contained in isolated domes of the gas sands below, or in pockets of gas cut off by the rising of the ground waters from below.

The evident purpose of the statute was to conserve the supply of natural gas contained in the gas sands within the state and to promote as nearly as possible a complete exhaustion of the gas contained in the gas sands. Under the evidence it appears that the requirement of the statute limiting the output to 25 per cent. of the free flow of gas from a well is admirably adapted to accomplish the purpose had in view by the Legislature. We are unable to see how the section of the statute limiting the outflow of gas to 25 per cent. of the free flow of a well has any application to an exhausted field, such as this has been since about the year 1913.

The defendant in its answer, pleading this statute as a defense, alleges:

"That the sum of 25 per cent. of the daily flow of all of the gas produced from all of its wells upon the land described in the schedule attached to the contract of 1906, and from all of its wells located in the field from which gas was to be taken for the plaintiff under the original contract of 1906, amounted to less than the sum of —————— cubic feet per day. The defendant could not legally comply with the terms of the contract of 1906 from and after March 26, 1913."

It will be noted that the date after which it is alleged the defendant could not legally comply with the terms of the contract is the date when the statute went into effect, and yet from that date until about the 1st of February, 1916, the defendant did as a matter of fact supply the plaintiff with gas substantially as required by the contract, and until the latter part of the year 1915 it also supplied gas in large

quantities to its other customers. Under date of February 7, 1916, the defendant wrote a letter to the plaintiff, demanding payment for the·gas furnished by it during the preceding month at the rate of 8 cents per 1,000 feet. At that time the defendant was willing to continue to supply the plaintiff with gas if it would pay the price demanded, notwithstanding the statute.

Under this state of facts this defense appears to be more theoretical than practical and is scarcely entitled to the serious consideration heretofore given it.

[8] The fourth defense urged by the defendant is based upon·what is known as the common purchaser statute of the state of Oklahoma. Neither the statute nor any facts to which the statute might apply are pleaded in the answer of·the defendant as a defense to the plaintiff's cause of action. The defense, therefore, is not within any issue in the case under the pleadings. Buchtel v. Evans, 21 Or. 309, 28 Pac. 67; Maitland v. Zanga, 14 Wash. 92, 44 Pac. 117; 13 C. J. § 891, note 79.

[9] The defendant, in the second defense set up in its answer, alleges:

"The subject-matter of the contract of 1906 had become exhausted and destroyed before January 1, 1916, and after that date the defendant, by reason of the destruction of the subject-matter of the contract, was unable to comply with the terms of the contract, because the amount of gas required by that contract could not then be produced from the land. And such destruction of the subject-matter of the contract was in no way the result of any act of the defendant, or any negligence on its part, but arose solely from the natural exhaustion of the gas field which was in the land covered by the contract of 1906."

At the trial the defendant attempted to prove the above defense, and, as already stated, it appears from the evidence that the field was practically exhausted long before February, 1916. After the practical exhaustion of the field there continued to be a few isolated producing wells located in gas pockets or upon domes of the gas sands and separated from each other by the underground water. It would seem to be quite evident that there is no reason for the application of this statute to the owners of such wells. The object of the statute, as correctly stated by the defendant in its brief, is:

"To prevent any one person or corporation from having an undue advantage, the law expressly prohibiting any discrimination in price; * * * that is to say, to prevent one company from selling gas at a less price than others were selling for, and so exclude other companies from the sale, and compel them to shut in their wells, and permit it to exhaust the field through its own wells."

The result which it is the object of the statute to prevent is possible by reason of the mobility of the gas in the sands in which it is found below the surface. A well drilled into the gas sands, often spoken of as a reservoir, would in the course of time in large measure exhaust the gas contained therein. In view of this mobility of the gas below the surface, it was the purpose of the statute to equalize the opportunities of the various well owners in the sale of gas contained in a common reservoir. But, as we have seen, from the conditions already described, the unfair opportunities arising from the mobility of the gas

no longer existed in the Hogshooter field, where the defendant was operating, and the prohibition of the statute against discriminations in favor of one producer as against another has no application.

After the refusal of the defendant to deliver gas under the contract, the plaintiff secured gas from the Quapaw Company, which was operating in the Hogshooter field. How the Quapaw Company secured its gas—whether it was the owner of wells and a producer, or was simply engaged in the business of transporting gas produced by others—does not appear from the record. The plaintiff paid the Quapaw Company at the rate of 10 cents per 1,000 cubic feet of gas, which, it is admitted, was the reasonable market value thereof. The defendant contends that, it being admitted that the market price of gas in the Hogshooter field was 10 cents per 1,000 cubic feet, the common purchaser statute prohibited the payment of any less price by the plaintiff to the defendant, or any other person producing gas in that field, and that the price fixed by the contract of 2 cents per 1,000 cubic feet became illegal and unenforceable.

Assuming the validity of the statute, and that the defendant by a sufficient pleading had made the statute a defense to the action, we do not think the statute has any application to an exhausted field, such as the Hogshooter field has been since about the year 1913.

The judgment will be reversed, and the court below directed to grant a new trial.