No. 23,867.

THE CITY OF CIMARRON, *Appellant*, v. THE MIDLAND WATER, LIGHT & ICE COMPANY and THE ELECTRIC SERVICE COMPANY, *Appellees*.

SYLLABUS BY THE COURT.

1. CITIES—*Contract With Private Corporation to Furnish City With Electricity—Rates Under Contract Subject to Regulation by Public Utilities Commission.* Where an electric light plant owned by a city and used by it to furnish light, heat and power for itself and for its residents, proves inadequate to the demands upon it and the city enters into a fifteen-year contract to obtain current at an agreed price from a company engaged in furnishing electricity to the people of one city and to several other cities, such company in entering into such contract acts as a public utility and is subject to regulation by the public utilities commission with reference thereto.

2. SAME. Where a city under a statutory power to contract for electric current enters into a fifteen-year contract with a private corporation to furnish it at an agreed price with electricity for its own use, and for its distribution to its residents on such terms as it shall see fit, the public utilities commission under a statute passed before the making of the contract, giving it power to regulate the charges of public utilities, may authorize an increase in the rates fixed in such contract—that is, it may release the company from the obligation to continue furnishing service at the contract rates.

3. SAME—*Pleading Incidental Matters.* Allegations in the petition concerning other matters are held to be merely incidental to the complaint concerning the increase of rates.

City of Cimarron v. Water, Light & Ice Co.

Appeal from Ford district court; Littleton M. Day, judge. Opinion filed March 11, 1922. Affirmed.

*Frank L. Martin, John M. Martin,* and *James N. Farley,* all of Hutchinson, for the appellant.

*E. H. Hogueland,* of Topeka, *Albert Watkins,* and *Arthur C. Scates,* both of Dodge City, for the appellees.

The opinion of the court was delivered by

Mason, J.: The city of Cimarron in 1917 had an electric plant by means of which it provided current for its own use and also for the use of its residents, in furnishing heat, light and power. The plant proving too small for the demands upon it, the city entered into a contract with the Midland Water, Light and Ice Company, of Dodge City, to supply it with electricity for the purposes indicated for fifteen years at 3, 4 and 5 cents per kilowatt hour, according to the quantity used, for the first three years, and 3 cents thereafter. On January 15, 1920, the public utilities commission, on the application of the Midland company, made an order permitting it to increase its rates to 5, 6 and 7 cents, according to quantity per month. Bills were rendered and paid according to the new schedule for some time, but in July, 1921, the city brought an action in the district court against the Midland company, and its successor, The Electric Service Company, asking an injunction against charging the increased rates, on the ground that the utilities commission had no jurisdiction in the matter. A demurrer to its petition was sustained, and it appeals.

The petition in addition to the foregoing facts alleged that the city could have obtained the additional current needed at a reasonable cost by enlarging its own plant, or by accepting a proposition from a Garden City company, but the Midland company represented that it was able to furnish it economically and at a reasonable price, and its offer was accepted in reliance upon that representation; that the cost of the service to the company was made unnecessarily large by the use of uneconomical material and methods; and that the company put up a transmission line from Dodge City to Cimarron as provided in the contract. It appears from the order of the utilities commission, which is embodied in the petition, that the company furnished electricity to the cities of Bucklin, Minneola, Mullinsville and Ford, as well as to the people of Dodge City. In the order of the commission the rates for current furnished to cities were designated as such merely by being placed under the head "Industrial Power."

1. The substance of the plaintiff's principal contention may be thus stated: The utilities commission had no jurisdiction to control the rates to be paid by the city to the company because the current was supplied under a private contract between the company and the city acting in its proprietary capacity. The company in supplying the current to the city was not acting as a public utility, serving the city as one of the public whom it was under legal obligation to supply on the same terms as its other customers; it arranged by a special agreement to sell to the city (not to its residents) a quantity of electricity, just as it might have contracted to furnish it so much water, or ice, or coal. It would not on its part have been at the expense of putting up the line from Dodge City to Cimarron except under a contract covering a term of years. And the city would not have agreed to take the current from it for that period except at a price fixed in advance. If the company made an improvident contract the utilities commission was no more empowered to relieve it therefrom to prevent its passing the loss on to the public, than if it had agreed to pay too much for its future supply of fuel, or to sell some by-product too cheaply. The statutory definition of a public utility may be literally read as including "all companies for the production, transmission, delivery or furnishing of heat, light, water or power" (Gen. Stat. 1915, § 8329), but the words quoted must be regarded as though qualified by the phrase "except for private use" occurring earlier in the chapter; and although a company is operating as a public utility in supplying electricity for light, heat and power to the public within its field of operation, there is no valid reason why it may not in a particular case furnish to a city outside of that field, under special contract, by means of a transmission line constructed for the purpose, so much current as the city may require to enable it to supply its own needs and those of its residents. The statute expressly excepts from the control of the commission utilities owned and operated by municipalities (Gen. Stat. 1915, § 8329), and if the commission can fix the price at which a city shall buy electricity it can thereby control the rates at which individuals are supplied by the city, and the effect of the statute is thereby nullified.

Upon this branch of the case the court reaches these conclusions: The company, in arranging to supply the city with electricity, whether for its own use or to be distributed among its residents, was acting in its character as a public utility. It could not make a dis-

criminatory contract with a city any more than with any other consumer.· (See Notes, 3 A. L. R. 736, 2d column; 10 A. L. R. 504.) The fact that the city was acting in its proprietary capacity tends to strengthen rather than weaken this view. The price at which service is furnished to municipalities necessarily affects the reasonableness of charges made to other consumers and should be subject to the same degree of regulation in the absence of statutory provision to the contrary. The immunity from control by the utilities commission given by the statute to municipalities applies where the city acts as a utility, and not where it is a customer of another utility. The fact that a transmission wire of considerable length (although Cimarron was nearer to Dodge City than some of the other cities served) had to be provided did not justify an agreement for different rates than obtained under similar conditions elsewhere. Neither that nor any of the circumstances stated authorized the making of a private contract, beyond legislative interference, to furnish electricity to a particular customer at a special rate.

2. The statute authorizes a city of the second or third class "to contract for and purchase . . . electric current . . . to be delivered where purchased or elsewhere, and to construct, maintain and operate . . . wires and other equipment for the transportation of the same from the place where such . . . electric current . . . may be delivered, to such points within or without the city as may be deemed advisable, for the purpose of supplying said city, its citizens and others, with . . . light, . . . power . . . or heat for domestic use or other purposes." (Gen. Stat. 1915, § 863.) The plaintiff urges that its contract with the company was duly authorized and under the federal constitution its obligation cannot be impaired by state law. A rate fixed for a term of years by a franchise contract expressly authorized by statute between a municipality and a public-service corporation cannot be reduced by a subsequent legislation, but there is room for doubt as to just what constitutes an express authorization. (Note, L. R. A. 1915 C, 261.) The prevailing view is that the legislature directly or through a utilities commission may increase franchise rates notwithstanding the existence of a contract valid as between the parties. (Notes, 3 A. L. R. 730; 9 A. L. R. 1165.) Many decisions to that effect are based on this reason, which does not apply to a reduction of rates—the city exists at the will of the state; its rights are subject to unlimited control by the legislature; the state may act

for it and in coöperation with the utility may in effect modify the contract. (Note, 3 L. R. A. 742; see, also, *Worcester v. Street Railway Co.*, 196 U. S. 549; and *Little River Township v. Reno County*, 65 Kan. 9, 68 Pac. 1105.) A distinction has sometimes been noted, in the matter of the effect of legislation thereon, between a contract made by a city for services to itself and one regarding rates to be charged to its residents. (Note, 3 A. L. R. 735; see, also, *Charleston v. Pub. Ser. Com.*, 86 W. Va. 536.) It is settled, however, that so far as concerns any provision of the federal constitution a statutory commission may fix rates to be charged by a public-service corporation to an individual, which will supersede those of an unexpired contract (*Union Dry Goods Co. v. Georgia P. S. Corp.*, 248 U. S. 372, annotated in 9 A. L. R. 1423), and this irrespective of whether the statute was passed before or after the contract was made. (*Producers Transp. Co. v. R. R. Comm.*, 251 U. S. 228, 232, and other cases cited in *Nowata County Gas Co. v. Henry Oil Co.*, 269 Fed. 742, 745.) We think a city even when (and perhaps especially when) acting in its proprietary capacity stands upon no higher ground in this regard than an individual or private corporation, and is subject to the same rule. (See *City of Washington v. Public Service Commission*, [Ind.] 129 N. E. 401; *Leiper v. Balt. & P. R. R. Co. et al.*, 262 Pa. St. 328; *State, ex rel., v. Pub. Serv. Comm.*, 275 Mo. 201; 3 Dillon on Municipal Corporations, § 1303, p. 2134, text to note 3.) In respect to its governmental powers a city is absolutely subject to legislative control. If that control is limited where the city acts in its proprietary capacity it must then be content to accept the same treatment given to a private corporation rather than claim any degree of immunity growing out of its public character, which it has in a sense laid aside for the time being. It cannot well assert at once and with respect to the same transaction the privileges peculiar to each side of its dual capacity. In the present case the law creating the utilities commission having been in force at the time the contract was executed may be regarded as entering into it and qualifying its provisions from the moment they were agreed to—a consideration of obvious importance if the question is otherwise regarded as doubtful. We hold that the utilities commission had power to authorize an increase in the rates fixed in the contract—that is, to release the company from the obligation to continue the service at the contract rates or at rates less than those fixed by the commission. The order of the commission does

not mean that the city must continue to take current from the company for the remainder of the fifteen-year period, paying at the rate fixed by the commission, but that that rate shall govern for so long as the city shall continue to receive current from that source. The question whether the city can be required to continue taking current from the company at a greater rate than that named in the contract is not involved and nothing herein contained is intended to affect that question one way or the other.

3. The plaintiff suggests that the petition was good against a demurrer because of allegations that the company had failed to keep its contract and that the city had incurred expense by reason thereof. A part of the prayer is that the company be required to furnish service in compliance with the contract and without interruption. These portions of the petition, however, appear to be inserted rather as incidental to and in connection with the rate controversy than as constituting an independent cause of action, and we think the ruling of the trial court must be treated as involving only the question of the jurisdiction of the utilities commission.

The judgment is affirmed.